The Native Voice - For all our Relations                                            home : about us : subsc



| | |
|---|---|
| **Headlines** | **Welcome to The Native Voice** |
| Warriors | |
| Women | Welcome to the The Native Voice newspaper, the largest native newspaper in the worl |
| Elders | **Latest Headlines** |
| Youth | |
| Earth | Wolfchild et al. v. United States: An exclusive interview with attorney |
| Voices | Erick Kaardal on the background, potential outcome, and implications |
| Sports | of this high-profile lawsuit |
| Native Amnesty | |
| Native Vote | |
| Gaming | |
| Advertising | |
| Classifieds | |
| Circulation | |
| Guestbook | |
| Chat | |
| Links | |

"...silence can be
and silence ofte
viewed as some a
of wrongdoing."
challenges call for
and a steady ha
Interview with for
Tom Da

WEWIN: Wome
Women for Indian
with Founder/Direc

Cobell lawsuit
testifies in

Fun St

Cecelia Fire Thu
Sovereignty is not
these are o

Honoring, Rem
Praying for Ou
exclusive Interviev
of Pfc. Lori A



Anpetu-Tokece, (Other Day), who rescued sixty-two persons from the Indian Massacre of 1862, in Minnesota. One of the "Loyal Mdewakanton," so named because they believed in living in peace with the United States and the settlers. The lineal descendants of this band are now the plaintiffs in the class-action lawsuit, Wolfchild et al. v. The United States for breach of trust responsibility.

Wolfchild et al. v. United States

An exclusive interview with attorney Erick Kaardal, attorney, on the background, potential outcome, and implications of this high-profile lawsuit seeking damages for breaches in U.S. trust responsibility in relation to the Mdwakanton Dakota Band of the Great Sioux Nation

Notice to plaintiffs: The deadline for application has been extended to June 23, 2006

Part One in a continuing series

By Lise Balk King

The Native Voice

There have been countless greivances – personal, political and legal – against the United States for wrongs done to Indian people since the formation of this Country. Many have been brought to the attention of the general public, a smaller number have been tried in court, and a few have been actually been successful in their effort to make the government accountable for the injustices. Wolfchild et al. v. United States is one of those rare examples. This court case, filed in the U.S. Federal Claims Court in Washington, DC in 2003 by the Minnesota law firm, Morhman and Kaardal, P.A., has been successful in arguing that a breach of trust responsibility has happened, and that certain compensation is due to those parties who have been damaged by this breach of trust. These people are, as named in the court case, all direct lineal descendants of the original members of a small band of Dakota Sioux called the "Loyal Mdewakanton." These people signed a contract with the U.S. Government, were given tracts of land in Minnesota, and were promised the "exclusive and equal benefit" of said lands. The lawsuit contends that these benefits have not followed the descendants "exclusively and equally" as intended, and the U.S. Federal Court has concurred.

Not only does the outcome of this lawsuit promise payment of damages for past mismanagement of trust responsibilites, but it may have far reaching consequences for those Indian communities that have, up until the decision of this court case, been the sole beneficiaries of the "benefits" of the original lands. They are the Shakopee Mdewakanton Sioux Community and the Prairie Island Indian Communities of Minnesota. Those lineal descendants who participate in Wolfchild et al. may be provided the opportunity to become members of these communities and therefore may reap the current benefits of "said lands," including significant casino revenues.

In the case of the Shakopee, owners of reportedly the second-most-profitable gaming operation in Indian country, the changes could be earth-shattering. Each of the 186 members of this community receive per-capita payments of over one million dollars per year. The current membership has been successful at severely restricting entrance of new members, including those with proof of adequate blood quantum and direct blood lineage. It is feasible that Wolfchild et al. v. United States could open up Shakopee's membership to include all lineal descendants identified in this lawsuit, thereby re-distributing their per-capita payments from under 200 members to over 4,000 members. The geographically less-advantaged Prairie Island Community has not been as successful in their gaming ventures, and has a different set of enrollment and per-capita payment guidelines.

This portion of the lawsuit, asking for compensation of "exclusive and equal benefit" into the future, has been by nature controversial. The Shakopee Community has been generous to the other, less financially successful Sioux tribes, donating millions of dollars each year to worthy causes and projects. They have been invited to participate in this lawsuit as plaintiffs, as has Prairie Island. Both Communities have declined the invitation.

The third community in question, the Lower Sioux, has had a majority of their members enter into the lawsuit as Plaintiffs. In April, their Council election yielded a three-fifths majority in favor of the Community's participation in the lawsuit, and they have voted to have the Community at large join as a Plaintiff.

There is a significant amount of work being done to identify the actual lineal descendants of the "Loyal Mdewakanton" for the purpose of compiling an

accurate and complete Plaintiffs list for this case. If you believe that you are a direct lineal blood descendant, you have until June 23, 2006 to submit your application for consideration. All of the information relevant to this pursuit, including research, history, court documents and rulings, the original 1886 and 1889 census lists that form the original members of the "Loyal Mdwakanton," and a list of current plaintiffs can be found on the Morhman and Kaardal, P.A. website: www.mklaw.com. (Please do not contact The Native Voice with your inquiries. We will direct you to contact the law firm)

Lise Balk King: First of all, how did this lawsuit get started and how did you come to be involved in this issue regarding the Mdewakanton Dakota?

Erick Kaardal, P.A.: Oddly enough I was born in Redwood Falls, [Minn.], and my family has been there for a long time. That's right next to Morton and Lower Sioux. And my father has a State Farm Insurance Agency and always had good relations with the members of Lower Sioux. Then I went on to go to college and law school and I started my practice here in [Minneapolis/St. Paul] which included civil rights work.

My father, after his retirement, was friends with a few elders from the Lower Sioux and they heard about some of the case work that we were doing in the legal arena including a case we had won in the U.S. Supreme Court involving civil rights. One of the elders, Morris Pendleton, asked my father if he could meet with me about issues of grievances or complaints he had regarding how the federal government was working with the lineal descendants [of the original Mdwakanton].

Then after that, Morris and I met for about an eighteen month period and we worked through the different grievances and issues. At times I was thinking there wasn't any way I could help them and other times I was thinking, "Well there is some promise here." Then I started doing some investigations factually and legally and then it really took off when Morris introduced me to others including Dr. Barbara Buttes (the lead anthropologist and historian for the Mdwakanton) and that's when we decided to do it. At the time, I didn't expect to win, I just thought that these people deserved having their question, their claim, put to a proper forum because I think that they had not been treated properly.

So, that's kind of where it was; with a civil rights background, I was looking to help people and sometimes it takes a lot of conversation to figure out if a lawyer can help people. We had that conversation and then we filed the lawsuit.

King: This started in 2003, so what is the status of the lawsuit now?

Kaardal: We're in the U.S. Court of Federal Claims. They have jurisdiction over any Native American trust mismanagement claims. When we filed the lawsuit, the United States moved to dismiss on the grounds that our clients weren't trust beneficiaries; we made a cross-motion for summary judgment on the grounds that, if the United States is wrong on that then they'd breach the trust because they made the elementary mistake of misidentifying trust beneficiaries.

There are two elementary mistakes that a trustee can make; one would be losing or giving away the trust property to the wrong person, or secondly, misidentifying the beneficiary. And so, here, there has been a misidentification of the beneficiary – and that's a big one, a very fundamental error – and so the judge resolved on our cross-motion that we won on liability at that point.

That was October 2004 and then the government made a motion for reconsideration and they lost that in November, 2005.